UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| PROCTOR GRAY, III, <br><br> Plaintiff, <br><br> v. <br><br> MS. BEVERLY ABNEY, <br><br> Defendant. | CAUSE NO.: 3:18-CV-040-JD-MGG |

OPINION AND ORDER

Proctor Gray, III, a prisoner without a lawyer, proceeds on an Eighth Amendment claim against Ms. Beverly Abney for being deliberately indifferent to his serious medical needs when she confiscated his medically necessary devices on August 30, 2017, despite allegedly knowing they were authorized, and deprived him of those devices until October 17, 2017. Sgt. Abney filed the instant motion for summary judgment, arguing that Gray cannot show that she caused any constitutional deprivation and that she was not deliberately indifferent to his serious medical needs. She also argues that she is entitled to qualified immunity.

EVIDENTIARY DISPUTES

As an initial matter, the court must resolve the evidentiary disputes raised by the parties. In reference to a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact *cannot* be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added). "In other words, the

Court must determine whether the material can be presented in a form that would be admissible at trial, not whether the material is admissible in its present form." *Stevens v. Interactive Fin. Advisors, Inc.*, 2015 WL 791384, *2 (N.D. Ill. Feb. 24, 2015).

In his response, Gray argues that the Miami Correctional Facility (MCF) post order related to receiving and releasing personal property (Exhibit A-2, ECF 34-4) is inadmissible because it has not been properly authenticated. ECF 39 at 2. As far as authentication is concerned, the Federal Rules of Evidence provide simply that, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "Rule 901 requires only a prima facie showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997). The Seventh Circuit has noted that "[a]uthentication relates only to whether the documents originated from [their purported source]; it is not synonymous to vouching for the accuracy of the information contained in those records." *United States v. Brown*, 688 F.2d 1112, 1116 (7th Cir. 1982). Here, Sgt. Abney points out that Major Danny Tucker, a custody supervisor at MCF, attests that he is familiar with the post order at issue and that Exhibit A-2 is a "true and accurate copy of the policy that specifically addresses offenders' personal property and medical braces." ECF 34-2; *see also* ECF 40 at 2, n. 1. Because testimony of a witness with personal knowledge can sufficiently establish authenticity, *see* Fed. R. Evid. 901(b), the court denies Gray's objection to the admissibility of the post order (Exhibit A-2) for purposes of summary judgment.

Next, in her reply brief, Sgt. Abney argues that the court should not consider any evidence of Gray's previous lawsuits because they are not relevant to the pending claim; she moves to strike Exhibit E-3 (ECF 39-1 at 30–35), Exhibit F-1 (ECF 39-1 at 36–37), and Exhibit J (ECF 39-1 at 46–56) in their entirety. ECF 40 at 1–2. She states that Gray is "essentially trying to argue as part of his response that because IDOC and its' staff have an alleged pattern of not showing care for his medical devices that this somehow imputes some sort of liability on the part of Abney." *Id.* at 2. Gray has responded, arguing that the they are not being used for that purpose but rather to show that Sgt. Abney was aware that the devices were medically necessary and previously authorized because he showed those documents to her. ECF 41 at 1–2. The court agrees with Gray that the documents are relevant to the extent they are being used to show what Sgt. Abney knew during the time period in question. Moreover, striking the documents in their entirety as requested would be overly broad. Therefore, the court denies Sgt. Abney's request to strike.

FACTS

Since the 1990s, Gray has used several medically prescribed devices on an ongoing basis while incarcerated within the Indiana Department of Correction—a knee cage brace on his right knee, an ankle brace on his right ankle, and a hearing aid in his left ear. ECF 39-1 at 3–4, 22–39. Gray experiences "excruciating pain" when he walks without the leg devices, and he is "unable to hear commands or other warnings" without the hearing aid. *Id.* at 4. Gray has maintained these devices throughout the

years pursuant to IDOC facility directives—from both the Indiana State Prison (ISP) and the Wabash Valley Correctional Facility (WVCF)—as well as court orders. *Id*. at 26–39.

On August 22, 2017, Gray was transferred from ISP to MCF due to an emergency medical issue unrelated to this lawsuit. *Id*. at 5. At the time, he was not wearing his medical devices because his property had been packed up by officers at ISP prior to the transfer. *Id*. Gray was processed through Receiving and Releasing (R&R) upon his arrival at MCF. ECF 34-2 at 1. Pursuant to IDOC policy,[1] all offenders that go through R&R have their personal property inventoried by staff officers. *Id*. In accordance with that policy, MCF has an additional confidential R&R post order that delineates the personal property authorized to enter the facility and sets forth the inventory procedures. ECF 34-2 at 2; ECF 34-4. The post order indicates that all offenders processed through R&R who are in possession of a medical brace will have it confiscated and turned over to the medical department.[2] *Id*. Offenders are to be told that they must submit a health care request form and be evaluated by medical in order to receive their brace back. *Id*. Only braces that are deemed medically necessary will be returned to inmates. *Id*. It is the medical staff who makes this determination and issues the returns. *Id*. This policy is in place for the safety and security of the facility. ECF 34-2 at 2.

---

[1] *See* IDOC Policy and Administrative Procedure 02-01-101, Offender Personal Property (Effective Date 4/1/16). ECF 34-2 at 1; ECF 34-3.

[2] "All brace's (sic) confiscated will go to Phase 1 Medical Director the day they were confiscated." ECF 34-4 at 1.

On August 30, 2017, Sgt. Abney inventoried Gray's property and confiscated multiple items including his hearing aid, two (2) knee cage braces, and an ankle brace. ECF 34-5; ECF 34-6 at 16. Sgt. Abney filled out a Notice of Confiscated Property form indicating that all medical items were turned over to medical. ECF 34-7. Later that day, when Gray became aware that the devices had been confiscated, he objected and attempted to explain to Sgt. Abney that he was authorized to have them—according to Gray, he showed her medical records, doctors' orders, and court documents to substantiate his claims, but she informed him that the documentation was not valid and that the knee cage braces were unauthorized because they contained metal. ECF 39-1 at 5–6, 22–42, 47–56; *see also* ECF 41 at 1–2. Gray attests that he subsequently approached Sgt. Abney several times in the dining hall regarding his need for the medical devices, but she refused to assist him. ECF 34-8 at 6; ECF 39-1 at 9. According to Gray, Sgt. Abney never informed him about the applicable post order or showed him a copy of it, and she did not specifically tell him that he needed to put in a health care request to see medical about getting his devices back pursuant to it. ECF 39-1 at 6–7. However, Gray does admit that a different officer, Lieutenant Green, told him to "sign-up for sick call" if he wanted his medical devices returned to him. *Id*. at 5.

On September 7, 2017, Gray submitted a request for an interview with the health care administrator, Lyn Frye, requesting his devices, but he received a response back indicating that "I have not received any of these items from custody – talk to custody." ECF 39-1 at 13. On September 11, 2017, Gray submitted a request for health care noting that he was having "a lot of pain in both of my knees, ankles, and hips. I would please

5

like to be seen by the doctor, thank you." ECF 34-9. That same day, Gray also submitted a complaint explaining he was medically authorized to have the devices that had been confiscated by Sgt. Abney but that they had not yet been returned to him. ECF 34-10. Ms. Frye responded on September 14, 2017, noting that "You will be getting the hearing aid and ankle brace back. MCF does not allow that type of knee braces so you will have to see a provider and see about getting braces without metal." *Id*. On September 21, 2017, Gray received his ankle brace back. ECF 34-6 at 16. On October 17, 2017, Gray received his hearing aid and knee cage braces back. *Id*. Medical staff made the decision to return the medical devices to Gray. ECF 34-2 at 2.

DISCUSSION

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

The Eighth Amendment, which protects against cruel and unusual punishment, is violated when prison officials display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). There is both an objective

6

and subjective component to this type of claim. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Specifically, a prisoner must establish that: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Here, Sgt. Abney concedes for purposes of the instant summary judgment motion that Gray's medical needs with regard to his hearing aid and braces were objectively serious. ECF 34 at 6, n. 2; ECF 40 at 2. Thus, only the subjective component of the analysis is at issue; namely, whether Sgt. Abney acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. To establish this component, the Seventh Circuit has held that:

> [t]he officials must know of and disregard an excessive risk to inmate health; indeed they must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the inference. This is not to say that a prisoner must establish that officials intended or desired the harm that transpired. Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk. Additionally, a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Greeno*, 414 F.3d at 653 (internal quotation marks and citations omitted). In other words, deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

Gray alleges that Sgt. Abney acted with deliberate indifference when she confiscated his hearing aid, ankle brace, and knee cage braces and then delayed,

7

hampered, and/or refused to assist in procuring their return in spite of being aware of evidence showing the devices were medically authorized and necessary. Sgt. Abney, however, argues that the confiscation was done in accordance with legitimate facility policies and that she cannot be held liable for the delay in the return of those devices because she was not personally involved in Gray's medical care or the decisions of the medical staff. According to Sgt. Abney, once she turned the devices over to the medical department, any further action or inaction cannot be viewed as deliberate indifference on her part. She relies heavily on the reasoning in *Greeno*, noting that:

> [i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Greeno*, 414 F.3d at 656 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

The court finds that the instant case is distinguishable from *Greeno* for several reasons. First, even assuming the items were initially confiscated in accordance with the MCF R&R post order on August 30, 2017, Gray has created a genuine dispute of material fact with regard to the timing of the subsequent events. Gray attests he informed Sgt. Abney that his hearing aid and braces were medically necessary and authorized—showing her relevant supporting documentation—on the same day she inventoried the items. While Sgt. Abney indicates that those devices were immediately turned over to the medical department for processing (ECF 34-7) thus absolving her of

8

any responsibility for their return, Gray has presented evidence that they were not received by medical from custody until sometime after September 7, 2017 (ECF 39-1 at 13). Considering she is alleged to have been made personally aware of their necessity by Gray on August 30, 2017, but did not ensure that the items had been received by medical for processing until approximately two weeks later,[3] a reasonable fact finder could conclude that the delay—during which Gray experienced constant "excruciating" pain and an inability to hear commands—is attributable to Sgt. Abney and could demonstrate deliberate indifference.

Moreover, during that time, it is unlikely that the medical staff would have been able to effectively treat and evaluate Gray's need for his specific medical devices—especially the braces—without having them in their possession, so Sgt. Abney's reliance on *Greeno* and resultant assumption that Gray was in capable hands because he was "under the care of medical experts" during that time period is misplaced. *Greeno*, 414 F.3d at 656; *see also King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (if nonmedical officers have a reason to believe that medical personnel are not treating a prisoner, they can be found deliberately indifferent).

Sgt. Abney also argues that she was not deliberately indifferent to Gray's serious medical needs overall because she believed her actions were in accordance with IDOC policy and the MCF R&R post order—specifically, Sgt. Abney points out that neither policy dictates that an officer conducting an inventory "is required to contact medical

---

[3] The MCF R&R post order states that all medical braces must go to the Phase 1 Medical Director the day they were confiscated. ECF 34-4.

9

right at that moment of the inventory to verify whether an offender is in need of a medical device." ECF 40 at 2. However, Sgt. Abney's argument misses the mark. It is true that she was not required to contact medical during the inventory process; rather, the issue is whether Sgt. Abney was required to do something more than simply turn the devices over to medical afterwards considering her actual awareness of the facts at hand. *See Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) ("The question is whether the non-medical defendants had any duty to do more than they did, in light of their knowledge of the situation."). There are material disputes as to those facts. For example, while Sgt. Abney indicates that she does not recall whether Gray showed her any medical documents or other paperwork on August 30, 2017, proving he was authorized to have the medical devices following the confiscation, Gray attests that he did and has submitted documentary evidence in kind. He attests that Sgt. Abney simply told him the paperwork was "not valid" and that he was not going to get the knee braces back because they contained metal. Similarly, while Sgt. Abney indicates that she informed Gray of the MCF R&R post order, showed him part of it, and told him that he needed to submit a health care request form pursuant to it in order to receive his devices back from medical, Gray attests that she did not.[4] Gray also attests that he approached Sgt. Abney several times subsequent to August 30, 2017, requesting her help in communicating with medical about the previous authorizations, but she ignored him.

---

[4] Sgt. Abney argues this dispute is not material because Gray admits that Lieutenant Green told him to "sign-up for sick call" if he wanted his medical devices returned to him; however, there is no indication that Sgt. Abney was aware that Lieutenant Green provided Gray with this information; Lieutenant Green's actions are not indicative of Sgt. Abney's state of mind.

10

Sgt. Abney, on the other hand, denies that any contact occurred after their initial meeting. Finally, although Sgt. Abney points out that Gray was not wearing his medical devices when he arrived at MCF, so it is "even more unlikely that [she] would have known a substantial risk of serious harm existed" (ECF 40 at 3), this argument ignores the fact that Gray attests he told her of both the medically authorized need for the devices and the pain and hearing loss he was experiencing without them.[5]

Thus, even assuming the initial inventory and confiscation was done in accordance with relevant IDOC and facility policies, the disputed facts noted above could reasonably suggest that Sgt. Abney became privy to additional information about the substantial risk of harm Gray faced following the confiscation of his devices yet ignored it and/or purposefully withheld that information from medical.[6] There is also evidence suggesting that Sgt. Abney did not provide Gray with applicable details regarding the MCF R&R post order and how he could effectively obtain relief from her confiscation decision. Taken together, a factfinder could conclude that Sgt. Abney purposefully disregarded a known risk of harm to Gray.

While it is undisputed that Sgt. Abney is not a medical professional and that the ultimate decision regarding the return of the confiscated devices rested with the medical department, she can be held liable for failing to sufficiently investigate Gray's

---

[5] Gray also points out that the reason he was not wearing the devices when he arrived is because of the urgency of the transfer and the fact that officers at ISP had packed up his things prior to his departure.

[6] In fact, if Gray's version of events is credited, Sgt. Abney improperly attempted to intervene in the medical evaluation to some extent when she determined that the previous medical authorizations were invalid but failed to advise medical personal of the documentation she based that decision on.

11

issues, for delaying or interfering with the processing of his claims, and/or for ignoring his post-confiscation complaints and requests altogether. There is no evidence that Sgt. Abney investigated Gray's claims or alerted the appropriate medical staff in any other way that Gray's medical devices were urgently needed and had been previously authorized by IDOC facilities and court orders. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical defendants cannot simply ignore an inmate's plight.") (citing *Greeno*, 414 F.3d at 656 (finding no deliberate indifference when a non-medical defendant sufficiently investigated the inmate's complaints and referred those issues to the medical providers who could be expected to address the inmate's concerns.")); *see also Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (non-medical administrator was entitled to defer to the medical staff because he had first "consulted with the medical staff, forwarded [the inmate's] concerns to the DOC, and timely responded to [his] complaints."). Sgt. Abney may not be held liable for the conduct of the medical staff or the decisions they made with regard to the return of the devices, but she did have a duty to respond reasonably to the issues that she, personally, was made aware of. *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Liability depends on each defendant's knowledge and actions . . . ."); *Board*, 394 F.3d at 478 (defendant can be found deliberately indifferent if he knew the plaintiff was at risk of serious harm and "decided not to do anything to prevent that harm from occurring even though he could have easily done so"); *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (deliberate indifference extends to guards who intentionally delay or deny access to medical care or who intentionally interfere with a prisoner's prescribed treatment). In sum, viewing the

facts outlined above in a light most favorable to Gray, a reasonable jury could conclude that Sgt. Abney was deliberately indifferent to Gray's serious medical needs.

Finally, Sgt. Abney argues in the alternative that, even if an Eighth Amendment violation did occur, she is entitled to qualified immunity. "Qualified immunity protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (internal quotation marks and citation omitted). To overcome a qualified immunity defense, "a plaintiff must show the deprivation of a constitutional right, and must also show that the right was clearly established at the time of the violation." *Id*. "A right is clearly established when existing precedent has 'placed the statutory or constitutional question beyond debate.'" *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The plaintiff does not need to point to a case "on all fours" with the defendant's alleged misconduct; rather, there must simply be "settled authority that would cause him to understand the illegality of the action." *Id*. (citations omitted). In some cases, the two inquiries effectively collapse into one:

> A plaintiff claiming an Eighth Amendment violation must show the defendant's actual knowledge of the threat to the plaintiff's health or safety, the defendant's failure to take reasonable measures, and the defendant's subjective intent to harm or deliberate indifference. If there are genuine issues of fact concerning those elements, a defendant may not avoid trial on the grounds of qualified immunity. Likewise, if the uncontested facts reveal a fatal gap in the plaintiff's case, the defendant will win on the merits.

*Walker*, 293 F.3d 1030, 1037 (7th Cir. 2002) (internal citations omitted).

Here, as outlined above, factual disputes exist as to whether Sgt. Abney was responsible for a delay in submitting the confiscated devices to medical, whether she obtained actual additional knowledge of the risk of harm post-confiscation from Gray, and whether she took reasonable measures to respond in light of that information. Crediting Gray's version of events, he has shown a plausible Eighth Amendment violation, but "[t]he court cannot resolve disputed issues of fact when it addresses [whether the facts alleged describe a violation of a protected right] because the ordinary rules governing summary judgment apply in that situation." *Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014) (citation omitted).

That said, it is well-settled that a prison official is deliberately indifferent to an inmate's medical needs if she "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Walker*, 293 F.3d at 1036–37. Sgt. Abney frames her argument in the sense that the confiscation of medical devices pursuant to facility directives was not a clearly established violation at the time in question; but, as Gray suggests, the issue is whether Sgt. Abney had knowledge of a risk of harm after the confiscation occurred and whether she disregarded it though her subsequent "inaction or woefully inadequate action." *Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir. 1998) (citation omitted). In *Hudson*, the Seventh Circuit found a "prototypical case of deliberate indifference" when the inmate informed non-medical prison officials of his potentially serious medical problem and requested assistance with regard to treatment but they did "nothing about it in the face of his repeated requests." *Id*. at 864. In light of

the above, Sgt. Abney cannot avoid trial on grounds of qualified immunity. *See e.g. Walker*, 293 F.3d at 1037 (recognizing that disputed material facts regarding the elements of an Eighth Amendment claim precludes dismissal based on qualified immunity).

For these reasons, the court DENIES the motion for summary judgment (ECF 33).

SO ORDERED on September 25, 2019

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT